UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**SUZANN RUFF,**

 Appellant,

v.                 No. 4:22-cv-1035-P

**DESTINATION DEVELOPMENT
PARTNERS, INC., ET AL.,**

 Appellees.

## MEMORANDUM OPINION & ORDER

Before the Court is Suzann Ruff's appeal of the Bankruptcy Court's Amended Final Judgment with brief in support. *See* ECF Nos. 1, 11. Having considered the briefing, evidence of record, and applicable law, the Court **OVERRULES** Ruff's points on appeal and **AFFIRMS** the Bankruptcy Court's decision.

## BACKGROUND

The Ruff's relationship is rough. In fact, this bankruptcy proceeding represents merely the latest chapter in a long saga of contention between Suzann Ruff and her sons Mike and Mark. For at least a decade, Suzann and her sons have thrown competing allegations of impropriety against each other regarding their business dealings in an array of closely held holding companies and related ranchland in Palo Pinto County. The Ruffs took their differences to arbitration, where Suzann obtained a favorable judgment against Mike and a constructive trust on all properties Mike owned or held "in any capacity." That award was subsequently incorporated into a related probate court judgment. Mike and Mark fell back on the tried-and-true delay tactic of frivolously removing the case to federal court in August 2015. After remand of that action and slow progress in state court, Suzann initiated the adversary proceeding which gives rise to this appeal.

Suzann's arbitration win expectedly caused several of Mike's businesses to declare Chapter 11 bankruptcy in 2018. All told, ten relevant entities filed for bankruptcy that year. The separate Chapter 11 proceedings were consolidated in November 2018 and John Spicer (the "Trustee") was appointed as Chapter 11 Trustee. After an onerous bankruptcy proceeding, seven of the cases were dismissed in May 2023, leaving only CM Resorts LLC, Specfac Group LLC, and Sundance Lodge LLC (collectively, the "Debtors"). The particulars of each relevant entity are largely irrelevant; what matters is whether the Debtors' assets fall under Suzann's constructive trust. The core proceeding was simple and revolved around that single question: does Suzann's constructive trust under the Arbitration Order cover properties owned by the Debtors? Suzann thinks it does; Mike disagrees.

As Suzann sees things, the Debtors are Mike's alter egos. And even if the Court won't make that legal determination, Suzann nevertheless contends the Debtors are transferees in clear privity with Mike vis-à-vis the contested property and the probate court's judgment. However the Court gets there, Suzann contends the Debtors' property is actually Mike's, meaning it falls into her constructive trust as outlined in the Arbitration Order and incorporated in the judgment. Because Suzann waived her other causes of action in the core proceeding, her briefing relies solely on the constructive trust claim as articulated in the Arbitration Order.[1]

The Bankruptcy Court denied relief for Suzann's claims. Suzann says the Bankruptcy Court was wrong on the facts, and she designated issues on appeal in December 2022. Painting with a broad brush, Suzann attacks the Bankruptcy Court's legal reasoning on one point and the Court's factual determinations on four points. The legal consideration on appeal relates to the Bankruptcy Court's requirement

---

[1] Notably, the Bankruptcy Court couldn't impose a new constructive trust on the relevant property because Suzann waived her claims against the Debtors for fraud and breach of fiduciary duty. And the law is clear that these claims are necessary predicates for the imposition of a new constructive trust over the property. *See* Bankr. Rec. at 126 ("Suzann has, for whatever reasons, strategically determined to forego the fraud- and conspiracy-based causes of action and pursue only the remaining causes of action against the debtor-defendants. Thus, it is with this backdrop that the Court considers each of these remaining claims.").

that certain disputed properties be deeded to Mike by name for Suzann's constructive trust to apply. The four factual disputes on appeal relate to the evidence in support of Suzann's contention that Mike constructively owns properties currently held in the Debtors' bankruptcy estates. While not technically a point on appeal, Suzann separately argues the Bankruptcy Court erred in declining to reach a determination as to whether the Debtors are in privity with Mike. As discussed below, however, the Court endorses the Bankruptcy Court's decision not to rule on this issue, as it was rendered moot by the Bankruptcy Court's determination that the probate court's judgment doesn't attach to the Debtors under the doctrine of *res judicata*.

## JURISDICTION

This Court has jurisdiction over appeals of a bankruptcy court's judgment pursuant to 28 U.S.C. § 158(a).

## STANDARD OF REVIEW

When a district court reviews a bankruptcy court's decision, it functions as an appellate court and utilizes the same standard of review generally applied by federal courts of appeals. *In re Webb*, 954 F.2d 1102, 1104 (5th Cir. 1992). Conclusions of law are reviewed *de novo*. *In re Young*, 995 F.2d 547, 548 (5th Cir. 1993). And findings of fact are reviewed for clear error. *In re Allison*, 960 F.2d 481, 483 (5th Cir. 1992). These findings are reversed only if, based on the entire body of evidence, the court is left "with the definite and firm conviction that a mistake has been made." *Beaulieu v. Ragos*, 700 F.3d 220, 222 (5th Cir. 2012).

## ANALYSIS

As noted above, Suzann's briefing broadly addresses five issues on appeal: (1) whether the Bankruptcy Court erred in finding she failed to establish that property from Exhibit A of the probate court's judgment was identified in the deed she executed to an entity called Icarus Investments IV; (2) whether the Bankruptcy Court erred in holding Mike's name had to appear on the deed given the constructive trust's broad wording (applying to property Mike "held or owned . . . in any capacity"); (3) whether the Bankruptcy Court erred in finding Suzann inadequately traced the Debtors' property to the Icarus Investments IV

transaction; (4) whether the Bankruptcy Court erred in finding the Debtors weren't Mike's alter egos; and (5) whether the Bankruptcy Court erred by finding a lack of privity between the Debtors and Mike. *See generally* ECF No. 11 at 9. With the exception of (2), these are all factual disputes. The Court briefly touches Suzann's legal argument below before proceeding to her factual disputes. To conclude, the Court addresses the propriety of the Bankruptcy Court's determination on *res judicata* vis-à-vis the probate court's judgment and the Debtors.

### A. The Bankruptcy Court applied proper legal standards in determining the relevant properties had to be deeded to Mike by name absent other evidence of ownership.

"The fundamental fact—admitted by Appellant—is that title to the property in question was never in the name of Mike Ruff." ECF No. 17 at 24 (citing ECF No. 11 at 23–24). With those words, Appellee appropriately cuts to the chase on this issue. That's what lawyers call a "bad fact" for Suzann, who asks the Court to apply her constructive trust to properties that were never deeded to Mike. *See* ECF No. 11 at 23–24 ("Throughout its lengthy oral opinion, the bankruptcy court notes that Mike never owned the property in question, i.e., his name, as an individual, is not on any of the deeds. That is true. But the bankruptcy court's conclusion from this fact, that the constructive trust never attached, is simply incorrect . . . ."). While the Court will later discuss Suzann's arguments that the Debtors were Mike's alter egos, the fact remains that the broad wording "held or owned . . . in any capacity" doesn't entitle Suzann to properties that were never deeded to Mike. And try as she might in the briefing, Suzann fails to show the Bankruptcy Court disregarded the probate court's judgment by reaching this conclusion. *See id.* (saying the Bankruptcy Court "ignore[d] the plain language of the constructive trust clause in the Judgment").

Semantics aside, it strains interpretive leniency too far to interpret the judgment's language as applying to property deeded to someone other than Mike. Whatever "in any capacity" means, it is qualified by the initial clause that the contested property must actually be *held by Mike*. Moreover, as discussed in detail below, the Bankruptcy Court rightly opined that "absolutely no evidence was introduced of Michael's

4

holding or ownership in any capacity of any real estate claimed to be owned by any of the debtor-defendants as of the bankruptcy filing, which is now property of the respective debtor-defendants' bankruptcy estates." Bankr. Rec. at 125. Thus, the Bankruptcy Court did not reject wholesale the notion that property could be Mike's even if not deeded to him by name. Rather, the Bankruptcy Court merely observed that, absent other evidence suggesting the property was Mike's, the Court cannot overlook the fact that the property was never deeded to him. While not dispositive, the Court's inquiry necessarily begins by looking to the legal document that conveyed the disputed properties. If the legal instrument conveyed the properties to someone other than Mike, Suzann must carry a heavy evidentiary burden to convince the Court that the instrument should be disregarded. *See generally Jackson v. Hernandez*, 285 S.W.2d 184, 186–87 (Tex. 1955) (explicating long-standing Texas jurisprudence on parol considerations that can overcome the express terms of a conveying instrument). She failed to do so.

Suzann tries to skirt this bad fact by relying on *Fitz-Gerald v. Hull*, 237 S.W.2d 256 (Tex. 1951). There, the Texas Supreme Court found equitable relief—a constructive trust—warranted under the case's facts. *Id.* at 261–62. Most salient among the case's facts was the existence of a breach of confidence/fiduciary duty. *See id.* ("While a confidential or fiduciary relationship does not in itself give rise to a constructive trust, an abuse of confidence rendering the acquisition of retention of property by one person unconscionable against another suffices generally to ground equitable relief in the form of the declaration and enforcement of a constructive trust."). The Court agrees with *Fitz-Gerald* that, for such an extraordinary form of equitable relief to apply, the evidence of record must clearly show the retention of disputed assets would be unconscionable. But here, Suzann never litigated a claim for fraud or breach of fiduciary duty against the Debtors, meaning the Bankruptcy Court had no legally supportable grounds to impose a constructive trust, no matter how vehemently Suzann cries foul. *See id.* Accordingly, the Court **OVERRULES** Suzann's issue on appeal relating to this point and **AFFIRMS** the Bankruptcy Court's legal reasoning.

5

### B. The Bankruptcy Court did not clearly err in finding (1) Suzann failed to establish that property from Exhibit A was identified in the deed executed to Icarus Investments IV and (2) Suzann failed to adequately trace the Debtors' assets from Icarus Investments IV.

Suzann's first and third factual disputes relate to the Bankruptcy Court's determination that she failed to sufficiently identify assets funneled through Icarus Investments IV. *See* ECF No. 11 at 21–23. On the front end, the Bankruptcy Court found Suzann failed to show the Icarus IV assets were covered by Exhibit A of the probate court's judgment, which enumerates properties covered by Suzann's constructive trust. On the back end, the Bankruptcy Court found Suzann failed to specifically trace assets subsequently deeded from Icarus IV to Debtors. For context, Suzann deeded certain ranchland to Icarus IV for Mike to develop, properties which were subsequently deeded to Debtors.

For Suzann's constructive trust to apply to the disputed properties, she must specifically identify both the properties conveyed to Icarus IV and the same properties then conveyed from Icarus IV to Debtors. This claim isn't small potatoes, as the only property independently owned by many of the Debtors (except for unliquidated claims) was property deeded from Icarus IV, rather than Suzann. *See* ECF No. 11 at 34. Thus, control of significant assets rests on whether the property Suzann deeded to Icarus IV falls under Exhibit A of the probate court's judgment (and whether Suzann can follow those assets all the way through the series of relevant transfers). Suzann says it does; the Bankruptcy Court disagreed.

With respect to the conveyance to Icarus, which primarily consists of ranchland in Palo Pinto County, the evidence of record doesn't sufficiently establish asset tracing from A to B to C, such that the properties could be transferred from the Debtors' bankruptcy estates into Suzann's constructive trust. Supporting Suzann—and weighing against the Bankruptcy Court's determination—is Suzann's personal testimony that the property conveyed to Icarus was "all of her land in Palo Pinto County." *See* ECF No. 11 at 22 (quoting Bankr. Rec. at 6573). When shown the Trustee's subordination agreement vis-à-vis the

6

relevant Debtor properties, Suzann unequivocally testified that the conveyance to Icarus consisted of ranchland Suzann received from her late husband, Art. *Id.*; *see also* Bankr. Rec. at 6585. Suzann avers that the Bankruptcy Court made the wrong call based upon this testimonial evidence. But she places too much confidence in her testimonial evidence, divorced as it is from other evidence within the record.

Texas law has long required heightened specificity when applying a constructive trust to a particular *res*. *See Longview Energy Co. v. Huff Energy Fund, LLP*, 533 S.W.3d 866, 868 (Tex. 2017) (noting "[d]efinitive, designated property, wrongfully withheld from another, is the very heart and soul of the constructive trust theory") (citation omitted). To require such specificity is an important safeguard that prevents the judiciary from loose-handling private property without certainty as to its origins. In light of this specificity requirement, the Bankruptcy Court was left with far too little information to justify a finding in Suzann's favor, both as to the property she initially conveyed to Icarus IV and to the property Icarus IV subsequently conveyed to Debtors.

Despite Suzann's ostensible confidence in her testimony, she voiced far more uncertainty as to the origins and identity of Icarus properties when examined during the core proceeding. For instance, when questioned about the relevant deed of conveyance from August 1, 2003, Suzann stated simply: "I don't know what the agreement is about." Bankr. Rec. at 6578. Beyond the deed itself, the closest Suzann ever got to "identifying" the relevant properties was the conclusory statement that they were "the family ranch" and consisted of "five-thousand plus acres." *Id*. She thus failed to provide any sufficient tracing of the contested properties such that the Bankruptcy Court could determine (1) they fall under Exhibit A of the probate court's judgment or (2) they were in fact the same properties incorporated into the Debtors' bankruptcy estates. While the law doesn't require photographic memory from Suzann, such conclusory generalizations fall far short of the specific tracing required to impose her constructive trust upon the Debtors assets obtained via Icarus IV. *See Longview Energy*, 533 S.W.3d at 866, 868. The Court thus **OVERRULES** these points on appeal and **AFFIRMS** the Bankruptcy Court's factual determination.

7

### C. The Bankruptcy Court did not clearly err in finding the Debtors aren't Mike's alter egos.

Suzann next contends the Bankruptcy Court erred in determining the Debtors are not Mike's alter egos, stating that "the evidence overwhelmingly shows they are empty shells that he used and uses to try and hide the assets he was found to have misappropriate[d] from Suzy." ECF No. 11 at 10. But the determination that an entity is an alter ego is extraordinarily exacting, appropriate only "when there exists such unity between corporation and individual that the corporation ceases to be separate and when holding only the corporation liable would promote injustice." *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986). In this regard, the Bankruptcy Court rightly noted that Texas law will not apply the alter ego remedy absent evidence of direct ownership. *Id.* Notions of "control" or "indirect ownership," however persuasive they might seem, won't cut it. *Id.*; *see also Bollore S.A. v. Imp. Warehouse, Inc.*, 448 F.3d 317, 325 (5th Cir. 2006) ("The great weight of Texas precedent indicates that, for the later ego doctrine to apply against an individual under this test, the individual must own stock in the company."). And this obstacle aside, Suzann's arguments are still unsupported by any other evidence within the record suggesting the entities were used as Mike's alter egos.

As discussed ad nauseum in the core proceeding, the Debtors are owned by the MAR Living Trust, not Mike in his personal capacity. *See, e.g.*, ECF No. 17 at 18 (and related record citations). While Suzann may well suspect that Mike exerts control over the Debtors by virtue of his control over the MAR Living Trust, she adduces no evidence of fraud, comingling, or other impropriety that would show Mike singularly controls the Debtors through the MAR Living Trust, let alone that he owns them. The Court isn't naïve regarding the capacity of individuals to conceal their control over business entities through layers of legal personhood—it doesn't strain credulity to believe someone in a spot like Mike's could control the Debtors through the MAR Living Trust. The Bankruptcy Court agreed, noting "I don't think it is a stretch to say that we have all of these entities in existence because Mike either created them or participated in the creation of these entities." Bankr. Rec. at 5933. But allegations aren't evidence.

8

With respect to the Debtors, the Bankruptcy Court observed that there's "no there, there." *Id.* at 5935. The Court agrees and is not unsympathetic to Suzann's arguments in this regard. However, absent evidence of fraud, comingling, or other impropriety, there's nothing inherently wrong with the creation of liability-shield entities to hold or manage assets. And the Court can't base a ruling upon suspicion, no matter how plausible the counter-explanation may be. Thus, the Bankruptcy Court, without any reliable evidence showing Mike used the MAR Living Trust to control the Debtors, could not act upon Suzann's unsubstantiated suspicions. *See id.* The Court will not fault the Bankruptcy Court for going only as far as the evidentiary record could take it.

So the Court is left with Suzann's suspicions versus the Bankruptcy Court's decision, which is soundly based in the evidentiary record. Had Suzann produced actual evidence that gave rise to an inference of impropriety, the Bankruptcy Court's analysis would look different. The Bankruptcy Court rightly noted the severity of the remedy Suzann seeks. *See id.* Corporations and LLCs are in effect "legal fictions" designed to catalyze the free exchange of capital and drive the economy forward while shielding constituent members from the threat of undue liability. This isn't to be taken lightly, and the Debtors' bankruptcy estates shouldn't be meddled with absent clear evidence that recognizing their liability-shield would result in manifest injustice.[2] In any event, Suzann attacks the Bankruptcy Court's factual determinations on appeal. The Court reviews those determinations for clear error, and "[a] finding of fact is clearly erroneous only if 'on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed.'" *BFN Ops., LLC v. PLT Constr. Co., Inc.*, 616 B.R. 683, 687 (N.D. Tex. 2020) (quoting *In re Perez*, 954 F.2d 1026, 1027 (5th Cir. 1992)). Lacking evidence to support such a "definite and firm conviction," the Court **AFFIRMS** the Bankruptcy Court's

---

[2]Here, Suzann also suggests the Bankruptcy Court erred by focusing myopically on corporate formalities. *See* ECF No. 11 at 34 (citing TEX. BUS. ORG. CODE § 21.223). But Suzann appeals to sections of the Texas Business Code that don't apply to the veil-piercing she seeks, rendering her argument erroneous on this point.

9

determination that the Debtors aren't alter egos for Mike and **OVERRULES** Suzann's dispute on this point.

### D. The elements of *res judicata* aren't met vis-à-vis the Debtors and the probate court judgment.

To conclude with an overarching issue, Suzann's arguments are all predicated on the enforceability of her Arbitration Order, as incorporated in the probate court's judgment, against the Debtors. Put differently, for Suzann's constructive trust on Mike's property to apply to the Debtors, her Arbitration Order must be enforceable upon them— *i.e.*, it must have a preclusive effect upon subsequent rulings from the Bankruptcy Court or other relevant tribunal. For her Arbitration Order to be enforceable upon Mike, it had to first be incorporated in the probate court's final judgment. Ordinarily, judgments against one person don't apply to the assets of another. And because the law prohibits second bites at the proverbial apple, subsequent rulings regarding the Debtors' assets are precluded from enforcement if the probate court's judgment is found to apply.

For the probate court's judgment to have such a preclusive effect, four conditions must be present: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both cases." *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 467 (5th Cir. 2013). The probate court's judgment incorporating the Arbitration Order satisfies elements (2) and (3), meaning Suzann must prove elements (1) and (4) for the Arbitration Order to apply to the Debtors. While Suzann extensively briefs the privity requirement for element one as between the Debtors and Mike, the Court agrees with the Bankruptcy Court that this showing need not be addressed. Mike isn't a party to this adversary proceeding. *See* ECF No. 1. And the Debtors weren't involved with the state-court proceeding or related arbitration. *Id.* Thus, even if Suzann prevailed in showing privity, she fails to show that the proceedings involved identical claims. Sure they may be similar insofar as they implicate the same corpus of assets, but they aren't the same claims. The Bankruptcy Court extensively detailed

10

its determination that the evidence shows no identicality between Mike's claims in the state-court case and the Debtors' claims here. *See* Bankr. Rec. at 110–131. Finding no reason to second-guess that determination here, the Court **AFFIRMS** the Bankruptcy Court's decision and similarly declines to address Suzann's privity arguments.

## CONCLUSION

The duly rendered decision of a Bankruptcy Court is entitled to deference unless the Court, upon review of the entire record, is left with a "definite and firm conviction that a mistake has been made." *Beaulieu*, 700 F.3d at 222. Having conducted such a review here, the Court sees nothing to cast the Bankruptcy Court's determination into doubt, much less to support a "definite and firm conviction" that the Bankruptcy Court missed the mark. *See id.* Accordingly, having **OVERRULED** Ms. Ruff's issues on appeal, the Court **AFFIRMS** the decision of the Bankruptcy Court.

**SO ORDERED** on this **1st day** of **November 2023.**

*[signature: Mark T. Pittman]*

Mark T. Pittman
UNITED STATES DISTRICT JUDGE